529 S.E.2d 588

Robert L. EASTERLING and S. Janie Easterling, Plaintiffs Below, Appellants,

v.

AMERICAN OPTICAL CORPORATION, American Stone–Mix, Inc., Clemco Industries Corporation, Clementina, Ltd., E.I. duPont deNemours & Company, P.K. Lindsay Company, Mine Safety Appliances Company, Minnesota Mining & Manufacturing Company, Pulmosan Safety Equipment Corporation, the Sherwin–Williams Company, U.S. Silica Company, Howard M. Weiss and Woofield Group, Inc., Defendants Below,

Bicknell Manufacturing Company and Buckeye Monument Company, Defendants Below, Appellees.

No. 26566.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 25, 2000.

Decided March 24, 2000.

Peter T. Enslein, Sutter & Enslein, Washington, D.C., Patrick S. Guilfoyle, Washington, D.C., Attorneys for the Appellants.

Thomas E. Scarr, Scott D. Maddox, Jenkins Fenstermaker, PLLC, Huntington, West Virginia, for Bicknell Manufacturing.

W. Michael Frazier, Frazier & Oxley, L.C., Huntington, West Virginia, Attorney for Buckeye Monument.

DAVIS, Justice:

This appeal was filed by Robert L. Easterling and S. Janie Easterling, plaintiffs below and appellants herein (hereinafter referred to as "Mr. [or] Mrs. Easterling"), from orders of the Circuit Court of Cabell County granting summary judgment to Buckeye Monument Company (hereinafter referred to as "Buckeye") and Bicknell Manufacturing Company (hereinafter referred to as "Bicknell"), defendants below and appellees herein. The circuit court granted summary judgment for each defendant concluding that it had no jurisdiction over either defendant.[1] This appeal challenges those rulings. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we affirm in part and reverse in part the decisions of the Circuit Court of Cabell County.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs are residents of Ohio. Mr. Easterling was employed by Buckeye, an Ohio company that sells cemetery headstones and monuments, from 1974 to 1997. Part of the work performed by Mr. Easterling for Buckeye involved sandblasting headstones and monuments. During Mr. Easterling's employment, he performed some degree of sandblasting in West Virginia on headstones and monuments that Buckeye sold to West Virginia residents.

In 1998, shortly after terminating his employment with Buckeye,[2] Mr. Easterling filed this civil action alleging that he developed silicosis[3] during his employment with Buckeye. Mr. Easterling asserts that Buckeye intentionally caused his exposure to dust particles resulting in his silicosis. Additionally,

---

1. The plaintiffs brought this action against at least fifteen other defendants who are not involved in this appeal.

2. The record fails to disclose the reason why Mr. Easterling left his employment.

3. Silicosis is a "lung disease caused by the inhalation of dusts containing silica—a common mineral found in sand, quartz, and various types of

rock." The American Medical Association, *Encyclopedia of Medicine* 906 (Charles B. Clayman ed., 1989). *See also Mosby's Medical & Nursing Dictionary* 1039 (2d ed. 1986) ("[Silicosis is] a lung disorder caused by continued, long-term inhalation of the dust of an inorganic compound, silicon dioxide, which is found in sands, quartzes, flints, and in many other stones.").

Mr. Easterling has made Bicknell a defendant in the action,[4] claiming that Bicknell sold defective sandblasting equipment to Buckeye. The Bicknell equipment was used by Mr. Easterling while he was working in West Virginia for Buckeye.

Both Buckeye and Bicknell filed motions to dismiss under Rule 12(b)(2) of the West Virginia Rules of Civil Procedure, asserting lack of personal jurisdiction. In deciding the motions, the circuit court considered matters outside the pleadings, thereby converting the motions to dismiss into summary judgment motions. The circuit court entered separate orders on February 23, 1999, and April 19, 1999, granting summary judgment to both Buckeye and Bicknell.

## II.

### STANDARD OF REVIEW

■ Buckeye and Bicknell filed their motions to dismiss under Rule 12(b)(2). *See* W. Va. R. Civ. P. 12(b)(2). In Syllabus point 2 of *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995), this Court held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." *See also Richardson v. Kennedy*, 197 W.Va. 326, 331, 475 S.E.2d 418, 423 (1996). However, this standard of review is limited to questions of law, and does not govern a court's findings of fact when a motion to dismiss for lack of personal jurisdiction involves an evidentiary hearing. As this Court recently held in Syllabus point 4 of *State ex rel. Bell Atlantic–West Virginia, Inc. v. Ranson*, 201 W.Va. 402, 497 S.E.2d 755 (1997):

> When a defendant files a motion to dismiss for lack of personal jurisdiction under *W. Va. R. Civ. P.* 12(b)(2), the circuit court may rule on the motion upon the pleadings, affidavits and other documentary evidence or the court may permit discovery to aid in its decision. At this stage, the party asserting jurisdiction need only make a prima facie showing of personal jurisdiction in order to survive the motion to dismiss. In determining whether a party has made a prima facie showing of personal jurisdiction, the court must view the allegations in the light most favorable to such party, drawing all inferences in favor of jurisdiction. If, however, the court conducts a pretrial evidentiary hearing on the motion, or if the personal jurisdiction issue is litigated at trial, the party asserting jurisdiction must prove jurisdiction by a preponderance of the evidence.

Thus, when considering a circuit court's findings of fact arising from an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, this Court's clearly erroneous standard of review is ordinarily invoked. *See* Syl. pt. 1, *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996) (holding that underlying factual findings are reviewed using a clearly erroneous standard).

■ In the instant proceeding, the trial court held a hearing on the Rule 12(b)(2) motions and received evidence outside the pleadings. As a result of considering matters outside the pleadings, the circuit court converted the Rule 12(b)(2) motions to Rule 56 motions for summary judgment.[5] *See* W. Va. R. Civ. P. 56. Although Mr. Easterling has not raised the issue of the appropriateness of converting motions under Rule 12(b)(2) to motions under Rule 56, we must nevertheless address this matter. "We are duty bound to take up [this] issue *sua sponte*, because it implicates the scope of our appellate jurisdiction." *Province v. Province*, 196 W.Va. 473, 478 n. 11, 473 S.E.2d 894, 899 n. 11 (1996). *Accord State v. Salmons*, 203 W.Va. 561, 568–69, 509 S.E.2d 842, 849–50 (1998).

## III.

### DISCUSSION

*A. Conversion of a Rule 12(b)(2) Motion into a Rule 56 Motion*

■ Our initial inquiry concerns whether the circuit court properly converted the

---

4. Bicknell is incorporated in Maine and has its principal place of business in Elberton, Georgia.

5. The standard of review for a motion for summary judgment is *de novo*. *See* Syl. pt. 1, *Koffler v. City of Huntington*, 196 W.Va. 202, 469 S.E.2d 645 (1996); Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

Rule 12(b)(2) motions to Rule 56 motions for purposes of summary judgment. This Court has not previously addressed the issue of whether a motion under Rule 12(b)(2) may be converted to a summary judgment motion when matters outside the pleadings are considered by a circuit court.[6] Rule 12(b) expressly requires only one provision under it, Rule 12(b)(6), be converted to summary judgment when matters outside the pleadings are considered. Rule 12(b) is silent as to whether Rule 12(b)(2) may or may not be converted to summary judgment when matters outside the pleadings are considered. In our review of federal cases, we find a split of authority as to whether a motion under Rule 12(b)(2) of the Federal Rules of Civil Procedure may be converted to a Rule 56 motion for summary judgment.[7]

Some federal courts conclude that "[t]he language of the Federal Rules seems to indicate ... that a district court may never convert Rule 12(b) motions, other than Rule 12(b)(6) motions, into motions for summary judgment in order to justify examination of extra-pleading information." *Thompson Trading Ltd. v. Allied Lyons PLC*, 123 F.R.D. 417, 421 (D.R.I.1989). In fact, the majority of federal courts considering the issue have held that a Rule 12(b)(2) motion *cannot* be converted into a Rule 56 motion, even though a trial court considers matters outside the pleadings. *See SK Fin. SA v. La Plata County Bd. of County Comm'rs*, 126 F.3d 1272, 1275 (10th Cir.1997); *Patterson v.*

*F.B.I.*, 893 F.2d 595, 604 (3d Cir.1990); *Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal*, 859 F.2d 1302, 1306 (7th Cir.1988); *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58 (2d Cir.1981); *Attwell v. LaSalle Nat'l Bank*, 607 F.2d 1157, 1161 (5th Cir.1979); *Hanson Eng'rs Inc. v. UNECO, Inc.*, 64 F.Supp.2d 797, 799 (C.D.Ill.1999); *Topliff v. Atlas · Air, Inc.*, 60 F.Supp.2d 1175, 1177 (D.Kan.1999); *Sunwest Silver, Inc. v. International Connection, Inc.*, 4 F.Supp.2d 1284, 1285 (D.N.M.1998); *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295, 298 (S.D.N.Y. 1996); *VDI Tech. v. Price*, 781 F.Supp. 85, 87 (D.N.H.1991); *Coan v. Bell Atl. Sys. Leasing Int'l, Inc.*, 813 F.Supp. 929, 942 n. 18 (D.Conn.1990); *Ulman v. Boulevard Enters., Inc.*, 638 F.Supp. 813, 814 n. 3 (D.Md.1986); *Mello v. K–Mart Corp.*, 604 F.Supp. 769, 771 n. 1 (D.C.Mass.1985). The rationale for not converting a motion to dismiss on jurisdictional grounds to a motion for summary judgment has been stated as follows:

[I]f the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action. In addition, a dismissal for want of jurisdiction has no preclusive effect and the same action subsequently may be brought in a court of competent jurisdiction. A summary judgment, on the other hand, is on the merits and purports to have preclusive effect on any later action. The court's role on the

6. Rule 12(b) of the West Virginia Rules of Civil Procedure provides in its entirety:

(b) Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon · which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for

relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

7. We have consistently held that "[b]ecause the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases ... in determining the meaning and scope of our rules." *Painter v. Peavy*, 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 761 n. 6 (1994).

two motions also is different. On a motion attacking the court's jurisdiction, the ... judge may resolve disputed jurisdictional-fact issues. On a motion under Rule 56 the judge simply determines whether any issues of material fact exist that require trial.

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2713, at 239–40 (1998). *See* Syl. pt. 1, in part, *Poling v. Belington Bank, Inc.*, 207 W.Va. 145, 529 S.E.2d 856 (1999) ("If a summary judgment is entered under Rule 56 R.C.P. it is a dismissal with prejudice; whereas, a judgment sustaining a motion to dismiss under Rule 12(b) R.C.P. is not a dismissal with prejudice."); Syl. pt. 4, *United States Fidelity & Guar. Co. v. Eades*, 150 W.Va. 238, 144 S.E.2d 703 (1965) (same).

The minority of federal courts that allow a Rule 12(b)(2) motion to be converted to a motion for summary judgment do so because trial courts consider matters outside the pleadings. *See Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81 (1st Cir.1997) (permitting Rule 12(b)(2) motion to be converted to Rule 56 motion for summary judgment); *Great W. Bank & Trust v. Kotz*, 532 F.2d 1252 (9th Cir.1976) (same); *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 64 F.Supp.2d 1105 (D.Kan.1999) (same); *Woods v. Bentsen*, 889 F.Supp. 179 (E.D.Pa.1995) (same).

We believe the majority rule to be the better approach. That is, a court with no jurisdiction has no power to enter a judgment on the merits and dismiss the action. Therefore, we hold that a motion under Rule 12(b)(2) cannot be converted to a Rule 56 motion for summary judgment, even though a trial court considers matters outside the pleadings in deciding the Rule 12(b)(2) motion. Having so held, we will treat the trial court's summary judgment disposition as a dismissal without prejudice, and proceed with the remaining issues in the case.

### B. Personal Jurisdiction

Both Buckeye and Bicknell were dismissed due to the circuit court's conclusion that it lacked personal jurisdiction. While the basic legal principles of jurisdiction apply equally to both defendants, the factual circumstances relating to each of them are different. Consequently, we will first review the relevant legal principles. Then, we will apply those principles separately to each defendant.

**1. General personal jurisdictional principles.** Fundamentally, "jurisdiction cannot be asserted over a defendant with which a state has no contacts, no ties and no relations." *State ex rel. CSR Ltd. v. MacQueen*, 190 W.Va. 695, 698, 441 S.E.2d 658, 661 (1994). Indeed, "[a] court which has jurisdiction of the subject matter in litigation exceeds its legitimate powers when it undertakes to hear and determine a proceeding without jurisdiction of the parties." Syl. pt. 4, *State ex rel. Smith v. Bosworth*, 145 W.Va. 753, 117 S.E.2d 610 (1960). Thus, "[i]n order to render a valid judgment or decree, a court must have jurisdiction both of the parties and of the subject matter and any judgment or decree rendered without such jurisdiction will be utterly void." Syl. pt. 1, *Schweppes U.S.A. Ltd. v. Kiger*, 158 W.Va. 794, 214 S.E.2d 867 (1975).

We have clearly communicated that "[i]n each case the reasonableness of a state's exercise of jurisdiction over a nonresident foreign corporation must focus on a qualitative analysis of the foreign corporation's contacts with the forum state." *Norfolk S. Ry. Co. v. Maynard*, 190 W.Va. 113, 116, 437 S.E.2d 277, 280 (1993) (citing *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). This Court cautioned in *Norfolk Southern* that "[t]he determination of personal jurisdiction stands or falls on each case's unique facts and precludes the use of 'mechanical tests' and 'talismanic jurisdictional formulas.'" 190 W.Va. at 116, 437 S.E.2d at 280 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 485, 105 S.Ct. 2174, 2185, 2189, 85 L.Ed.2d 528, 545, 549 (1985)).

Moreover, in Syllabus point 5 of *Abbott v. Owens–Corning Fiberglas Corp.*, 191 W.Va. 198, 444 S.E.2d 285 (1994), this Court relied on the decision in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290, 100 S.Ct. 559, 563–64, 62 L.Ed.2d 490, 497 (1980), to set forth a two-part analysis for determining whether a circuit court has per-

sonal jurisdiction over a nonresident defendant or foreign corporation:

> A court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident. The first step involves determining whether the defendant's actions satisfy our personal jurisdiction statutes set forth in *W. Va.Code*, 31–1–15 [1996] and *W. Va.Code*, 56–3–33 [1996]. The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process.

*Accord* Syl. pt. 4, *Bowers v. Wurzburg*, 202 W.Va. 43, 501 S.E.2d 479 (1998).

■■■ In applying our long-arm statutes, which is required by the first step in the foregoing test, we have acknowledged that they "must be read in conjunction with the constitutional due process concept that a foreign corporation must have certain 'minimum contacts' before it is amenable to personal jurisdiction in our courts." *Kidwell v. Westinghouse Elec. Co.*, 178 W.Va. 161, 162, 358 S.E.2d 420, 421 (1986). We have provided guidance for determining the requisite "minimum contacts" by stating that "[t]he standard of jurisdictional due process is that a foreign corporation must have such minimum contacts with the state of the forum that the maintenance of an action in the forum does not offend traditional notions of fair play and substantial justice." Syl. pt. 1, *Hodge v. Sands Mfg. Co.*, 151 W.Va. 133, 150 S.E.2d 793 (1966). *Accord* Syl. pt. 1, *Hill by Hill v. Showa Denko, K.K.*, 188 W.Va. 654, 425 S.E.2d 609 (1992); *Hinerman v. Levin*, 172 W.Va. 777, 781, 310 S.E.2d 843, 847 (1983); Syllabus, *S.R. v. City of Fairmont*, 167 W.Va. 880, 280 S.E.2d 712 (1981).

■■■ Further clarifying the concept of minimum contacts, we explained in *Norfolk Southern* that "[t]he critical element for determining minimum contacts is not the volume of activity but rather 'the quality and nature of the activity in relation to the fair and orderly administration of the laws.'" 190 W.Va. at 116, 437 S.E.2d at 280 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95, 104 (1945)). In Syllabus point three of *Pries v. Watt*, 186 W.Va. 49, 410 S.E.2d 285 (1991), we also observed:

> To what extent a nonresident defendant has minimum contacts with the forum state depends upon the facts of the individual case. One essential inquiry is whether the defendant has purposefully acted to obtain benefits or privileges in the forum state.

■■■ Finally, we have recognized that foreseeability is a necessary element in determining whether a defendant's contacts satisfy due process. In this regard, we have commented that "'the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Showa Denko*, 188 W.Va. at 657, 425 S.E.2d at 612, (quoting *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501). Thus, it is within this legal context that we analyze the lower court's rulings.

■■■ **2. Dismissal of Buckeye.** After concluding that it did not have personal jurisdiction over Buckeye, the circuit court granted summary judgment and stated:

> The court notes that West Virginia has a two-prong test to determine the propriety of personal jurisdiction over a nonresident defendant. After reviewing the facts of this case, the affidavits submitted and the applicable laws of the State of West Virginia, the court finds that the first prong of this test concerning the "long arm" statute has likely been satisfied by the plaintiffs with respect to Buckeye Monument Company. However, the court further finds that the plaintiffs have failed to satisfy their burden concerning the second prong of the test, and, accordingly, finds that Buckeye did not possess sufficient minimum contacts with West Virginia to enable this court to exercise personal jurisdiction over Buckeye and to satisfy due process of law.

Under step one of the two-step analysis articulated in Syllabus point 5 of *Abbott*, 191 W.Va. 198, 444 S.E.2d 285, the plaintiffs were required to establish that the actions of Buckeye satisfied W. Va.Code § 56–3–33(a)

(1997) (Supp.1999) [8] and W. Va.Code § 31–1–15 (1997) (Supp.1999).[9] The circuit court ruled that the plaintiffs established jurisdiction over Buckeye under the long-arm statutes. The plaintiffs have not challenged this favorable ruling by the circuit court. Moreover, in its brief, Buckeye fails to directly address either prong of the two-part test communicated in *Abbott.*[10] In view of the fact that neither party briefed this issue, we will not disturb the circuit court's ruling.

The second step in determining whether personal jurisdiction exists over Buckeye involves determining whether Buckeye's contacts with West Virginia satisfy federal due process. The circuit court found, in a conclusory fashion, that Buckeye did not have sufficient minimum contacts with West Virginia to satisfy federal due process. In contrast, the record in this case clearly establishes that Buckeye performed significant sandblasting work on headstones and monuments in West Virginia.

Mr. Easterling submitted an affidavit indicating he performed work for Buckeye in the West Virginia cities of Kenova, Huntington and Barboursville. In his brief, Mr. Easterling contends that he made a total of at least "102 sandblast trips into West Virginia for Buckeye." Mr. Easterling also proved that during the period of his employment with Buckeye, "other Buckeye personnel made 100 sandblast trips and Buckeye personnel made over 180 West Virginia headstone placement trips." Additionally, it was shown that during Mr. Easterling's employment with Buckeye, the company's "earnings from West Virginia customers totaled more than $3 million."

**8.** This State's primary long-arm statute, W. Va. Code § 56–3–33(a) (1997) (Supp.1999), confers *in personam* jurisdiction on a nonresident who engages in any one of seven acts enumerated therein:

(1) Transacting any business in this state;

(2) Contracting to supply services or things in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume or be affected by the goods in this state: Provided, That he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Having an interest in, using or possessing real property in this state; or

(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

**9.** W. Va.Code § 31–1–15 (1997) (Supp.1999) reads in relevant part:

For the purposes of this section, a foreign corporation not authorized to conduct affairs or do or transact business in this state pursuant to the provisions of this article shall nevertheless be deemed to be conducting affairs or doing or transacting business herein (a) if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this state, (b) if such corporation commits a tort, in whole or in part, in this state, or (c) if such corporation manufactures, sells, offers for sale or supplies any product in a defective condition and such product causes injury to any person or property within this state notwithstanding the fact that such corporation had no agents, servants or employees or contacts within this state at the time of said injury.

**10.** The sum total of Buckeye's argument on the jurisdictional issue is as follows: "As to the jurisdictional arguments, this appellee simply reiterates its Motion to Dismiss and the brief filed in the Circuit Court. Buckeye also joins in the jurisdictional arguments made by Bicknell." Obviously, counsel for Buckeye has not read this Court's Rules of Appellate Procedure or any of our recent decisions admonishing the bar about the contents of briefs. As pointed out by Justice Cleckley, " '[j]udges are not like pigs, hunting for truffles buried in briefs [or somewhere in the lower court's files]....' " *State v. Honaker,* 193 W.Va. 51, 56 n. 4, 454 S.E.2d 96, 101 n. 4 (1994) (quoting *Teague v. Bakker,* 35 F.3d 978, 985 n. 5 (4th Cir.1994)). *See also Mayhew v. Mayhew,* 205 W. Va. 490, 503 n. 35, 519 S.E.2d 188, 201 n. 35, (1999) ("[A] skeletal 'argument', really nothing more than an assertion, does not preserve a claim.... Judges are not like pigs, hunting for truffles buried in briefs." (internal quotations and citation omitted)); *Clain–Stefanelli v. Thompson,* 199 W.Va. 590, 593 n. 1, 486 S.E.2d 330, 333 n. 1 (1997)(same); *State Dep't. of Health v. Robert Morris N.,* 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995) (same). We, therefore, find that any personal jurisdiction argument or cross-assignment of error Buckeye purports to make will not be considered. *See Clain–Stefanelli,* 199 W.Va. at 593 n. 1, 486 S.E.2d at 333 n. 1.

Based upon the foregoing, this Court finds it difficult to conclude that Buckeye's work in West Virginia does not meet the minimum contacts requirement to satisfy federal due process. We are mindful that "[t]he critical element for determining minimum contacts is not the volume of the activity but rather 'the quality and nature of the activity.'" *Norfolk Southern*, 190 W. Va. at 116, 437 S.E.2d at 280 (citation omitted). The record in this case further supports the plaintiffs' personal jurisdictional claim insofar as the nature of the work performed by Buckeye in West Virginia included sandblasting—which is the basis of this action. In view of the evidence in this case, we cannot conclude that hauling Buckeye into a court in West Virginia to answer for an alleged injury associated with its sandblasting work in this State, "offend[s] traditional notions of fair play and substantial justice ." *Norfolk Southern*, 190 W.Va. at 116, 437 S.E.2d at 280 (citation omitted). The touchstone of "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 559, 567, 62 L.Ed.2d at 501. Because Buckeye had sufficient contacts with West Virginia to satisfy federal due process, the circuit court erred in dismissing Buckeye based upon a lack of personal jurisdiction.

■ **3. Deliberate intent cause of action against Buckeye.** Although we find that the circuit court committed error in dismissing Buckeye on the issue of personal jurisdiction, we must nevertheless address an additional issue raised and briefed by Buckeye. In its brief, Buckeye contends that the circuit court does not have jurisdiction over the plaintiffs' deliberate intent cause of action. This is a subject matter jurisdiction issue that was not addressed by the circuit court. "Typically, we have steadfastly held to the rule that we will not address a nonjurisdictional issue that has not been deter-

mined by the lower court." *State ex rel. Clark v. Blue Cross Blue Shield of West Virginia, Inc.*, 203 W.Va. 690, 699, 510 S.E.2d 764, 773 (1998). *Accord* Syl. pt. 2, *Trent v. Cook*, 198 W.Va. 601, 482 S.E.2d 218 (1996); Syl. pt. 3, *Voelker v. Frederick Bus. Properties Co.*, 195 W.Va. 246, 465 S.E.2d 246 (1995). However, the issue asserted by Buckeye "is one of jurisdiction, which may be raised for the first time on appeal." *Jan-Care Ambulance Serv., Inc. v. Public Serv. Comm'n of West Virginia*, 206 W. Va. 183, 189 n. 4, 522 S.E.2d 912, 918 n. 4 (1999). *See also* Syl. pt. 6, in part, *State ex rel. Hammond v. Worrell*, 144 W.Va. 83, 106 S.E.2d 521 (1958) ("Lack of jurisdiction may be raised for the first time in this court, and may be taken notice of by this court on its own motion.")(internal quotations and citation omitted.)

■ Buckeye opines that since it is an Ohio company subject to the workers' compensation laws of Ohio, the plaintiffs may only bring their cause of action in Ohio. Buckeye cites to this Court's decisions in *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996), and *Bell v. Vecellio & Grogan, Inc.*, 197 W.Va. 138, 475 S.E.2d 138 (1996), as support for its argument.

We do not agree with Buckeye's conclusion that *Gallapoo* and *Bell* have established a *per se* exclusion for a tort claim against an out-of-state employer for injuries to an out-of-state employee that occurred in West Virginia. However, *Gallapoo* and *Bell* do place certain limitations on such an action. In *Gallapoo*, an out-of-state worker was injured in West Virginia. The worker sought to bring a deliberate intent cause of action against the out-of-state employer under the deliberate intent provision of West Virginia's workers' compensation statute, namely W. Va.Code § 23–4–2.[11] The *Gallapoo* court rejected the cause of action. Relying in part on this Court's holding in *Bell*,[12] the *Gallapoo* court held in Syllabus point 3:

11. *Gallapoo* was presented as a certified question.

12. W. Va.Code § 23–4–2(c)(2)(i)–(ii) (1991) (Supp.1991) blended within the West Virginia

workers' compensation scheme the directive that all employees covered by the West Virginia Workers' Compensation Act are subject to every provision of the workers' compensation chapter and are entitled to all benefits and privileges

A non-resident employee who is injured in this State and is protected under the terms and provisions of the workers' compensation laws of a foreign state shall not be entitled to the benefits and privileges provided under the West Virginia Workers['] Compensation Act, including the right to file and maintain a deliberate intention cause of action under W. Va.Code § 23–4–2(c)(2) (1994).

197 W.Va. 172, 475 S.E.2d 172.

The facts of the instant proceeding fit squarely under the prohibition of *Gallapoo*. A review of Count Two of the plaintiffs' complaint reveals that they have established a deliberate intent cause of action against Buckeye, using all of the elements contained in W. Va.Code § 23–4–2(c)(2)(ii). Moreover, in paragraph 21 of Count Two, the plaintiffs specifically aver that "Buckeye acted with 'deliberate intention' as defined by West Virginia Code § 23–4–2." Thus, under this Court's prior decision in *Gallapoo*, the circuit court does not have subject matter jurisdiction over the plaintiffs' deliberate intent cause of action against Buckeye. We cannot however end our analysis on this conclusion. Two additional issues must be addressed.

*(a) Obtaining subject matter jurisdiction over a claim by an out-of-state employee against an out-of-state employer.* The decisions in *Gallapoo* and *Bell* address only the issue of a cause of action brought by an out-of-state employee against an out-of-state employer, wherein the cause of action was premised upon West Virginia's deliberate intent statute. During oral argument and in their brief, the plaintiffs have strenuously argued that the substantive laws of Ohio should govern the case against Buckeye. Therefore, plaintiffs contend they are not foreclosed by *Gallapoo* and *Bell*. On the other hand, Buckeye has argued for an interpretation of *Gallapoo* and *Bell* that would prohibit *all* causes of action in West Virginia that may be brought by an out-of-state employee against his or her out-of-state employer for injuries that occurred in West Virginia.

The general rule pertaining to the issue raised here is that "if a damage suit is brought in the forum state by the employee against the employer ..., the forum state will enforce the bar created by the exclusive-remedy statute of a state that is liable for workers' compensation[.]" Arthur Larson & Lex K. Larson, Vol. 9, *Larson's Workers' Compensation Law*, § 88.11 (1999). On the other hand, if the workers' compensation laws of the foreign state permit a tort action by an employee against an employer, then such an action may be maintained in the forum state through application of the laws of the foreign state. The rationale for applying the substantive workers' compensation law of the foreign state is "that the dominant interest is in the state that is the residence of the parties rather than in the state that is the location of the negligent [or intentional] conduct and the injury." *Farias v. Mattel, Inc.,* 153 Ariz. 113, 735 P.2d 143, 145 (Ct.App. 1986) (citations omitted).

■ We are not prepared to extend *Gallapoo* and *Bell* to bar all civil actions by an out-of-state employee against his or her out-of-state employer. Therefore, we hold that the courts of West Virginia have subject matter jurisdiction over a cause of action brought by an out-of-state employee against an out-of-state employer for an injury occurring in West Virginia, where the complaint can be fairly read as setting out a cause of action under the laws of the foreign jurisdiction wherein the employer is situate, and wherein the employer is obligated to carry some form of workers' compensation.[13]

*(b) Disposition of the plaintiffs' claim against Buckeye.* In the instant proceeding, the plaintiffs' complaint invokes the prohibition of *Gallapoo* and *Bell* by actually bringing their cause of action under the workers' compensation laws of West Virginia. Although we have found that the circuit court committed error by dismissing Buckeye on personal jurisdiction grounds, the claim against Buckeye must nevertheless be dismissed because of lack of subject matter

---

under the Workers' Compensation Act, including the right to file a direct deliberate intention cause of action against an employer pursuant to W. Va.Code § 23–4–2(c)(2)(i)–(ii).

**13.** Obviously, personal jurisdiction must also be satisfied.

jurisdiction. Therefore, the circuit court's order dismissing Buckeye is affirmed. *See* Syl. pt. 3, *State v. Boggess*, 204 W.Va. 267, 512 S.E.2d 189 (1998) (" 'This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.' Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965).").

We must make clear, however, that Buckeye's dismissal is without prejudice to the plaintiffs to amend their complaint for the sole purpose of properly setting out their cause of action by expressly invoking Ohio laws that permit such an action. *See State ex rel. Palumbo v. Graley's Body Shop, Inc.*, 188 W.Va. 501, 510 n. 18, 425 S.E.2d 177, 186 n. 18 (1992) ("We point out that a judgment sustaining a motion to dismiss under W. Va. R. Civ. P. 12(b) would be a dismissal without prejudice."); *Sprouse v. Clay Communication, Inc.*, 158 W.Va. 427, 457, 211 S.E.2d 674, 694 (1975) (same).

■ **4. Dismissal of Bicknell.** In its order dismissing Bicknell, the circuit court stated in a conclusory fashion:

[T]he Court, considering all disputed factual allegations in a light most favorable to the plaintiffs, finds that, West Virginia's "long arm" statute has been satisfied by plaintiffs with respect to Bicknell. The Court further finds that plaintiffs have failed to satisfy their burden to establish that nonresident defendant Bicknell possessed sufficient "minimum contacts" with West Virginia to enable this Court to exer-

cise personal jurisdiction over Bicknell and to satisfy due process of law.

■ This dismissal order entered in favor of Bicknell fails to satisfy the requirements of *Abbott v. Owens–Corning Fiberglas Corp.*[14] *See* Syl. pt. 5, 191 W.Va. 198, 444 S.E.2d 285. In *Abbott*, we were called upon to review a circuit court's decision to grant a motion to dismiss for lack of personal jurisdiction. In undertaking the jurisdictional two-step analysis, we found that the circuit court's dismissal order presented appropriate analyses under W. Va.Code § 31–1–15 and federal due process, but failed to provide any analysis of W. Va.Code § 56–3–33(a). "Accordingly, we remand[ed] the case to the circuit court to consider whether or not the defendants ha[d] engaged in one of the acts specified in subsections (1) through (7) of W. Va.Code, 56–3–33(a) [1984]." *Abbott*, 191 W.Va. at 208, 444 S.E.2d at 295.

■ In the instant proceeding, the circuit court's order indicates that it only analyzed jurisdiction under W. Va.Code § 56–3–33 and federal due process. The order states: "In their complaint, plaintiffs specifically assert that the Court's jurisdiction in this matter is based on West Virginia Code § 56–3–33, West Virginia's primary 'long-arm' statute." A review of the complaint indeed supports the circuit court's finding that the plaintiffs only invoked W. Va.Code § 56–3–33. However, under the requirements of *Abbott*, the circuit court must nevertheless perform an analysis under *both* of our long-arm statutes. Accordingly, under the aforementioned authority, the order dismissing Bicknell is reversed, and the case remanded for entry of an order, if the court so concludes, that comports with the requirements of *Abbott*.[15]

**14.** As we previously indicated, the circuit court's orders are being treated as nonprejudicial dismissal orders, and not as summary judgment orders. However, even were we to treat the order dismissing Bicknell as a summary judgment order, it does not satisfy the requirements of Syllabus point 3 of *Fayette County National Bank v.. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997):

Although our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of

fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

**15.** We also note that on remand, if the circuit court concludes that dismissal of Bicknell is appropriate, its dismissal order must include adequate findings of fact and conclusions of law. *See* Syl. pt. 1, *P.T.P. v. Board of Educ. of Jefferson County*, 200 W.Va. 61, 488 S.E.2d 61 (1997) ("A circuit court's order granting dismissal should set out factual findings sufficient to permit meaningful appellate review. Findings of fact include facts which the circuit court finds relevant, determinative of the issues, and undisputed."). The

## IV.

### CONCLUSION

In view of the foregoing, we affirm the dismissal of Buckeye, and clarify that the dismissal is without prejudice to the plaintiffs to amend their complaint. Further, we reverse the dismissal of Bicknell and remand with instructions that the circuit court enter an order dismissing Bicknell without prejudice, if the court so concludes, that comports with the requirements of our case law.

Affirmed in part; Reversed in part; and Remanded.

decision in *P.T.P.* modified W. Va. R. Civ. P. 52(a), which provides that findings of fact and conclusions of law are unnecessary for decisions on Rule 12(b) motions.