569 S.E.2d 473

**ALLSTATE WRECKER SERVICE and Cecilia Sanson, D.B.A. Allstate Wrecker Service, Plaintiffs Below, Appellants,**

v.

**KANAWHA COUNTY SHERIFF'S DEPARTMENT; County Commission of Kanawha County; 911 Emergency Service; City of St. Albans; and Abbott's Garage & Wrecker Service and Eugene Mallory, D.B.A. Abbott's Garage & Wrecker Service, Defendants Below, Appellees.**

No. 30098.

Supreme Court of Appeals of West Virginia.

Submitted June 11, 2002.

Decided June 24, 2002.

Dissenting Opinion of Justice McGraw July 3, 2002.

228

Marvin W. Masters, Rachael A. Carrico, Masters & Taylor, Charleston, West Virginia, Attorneys for the Appellants.

Charles R. Bailey, Bailey & Wyant, Charleston, West Virginia, Attorney for the Appellees, Kanawha County Sheriff's Department, County Commission of Kanawha County, and 911 Emergency Service.

Ancil G. Ramey, Joanna I. Tabit, Steptoe & Johnson, Charleston, West Virginia, Attorneys for the Appellee, City of St. Albans.

Thomas J. Gillooly, John A. Singleton, Charleston, West Virginia, Attorneys for the Appellee, Abbott's Garage & Wrecker Service.

PER CURIAM:

Allstate Wrecker Service ("Allstate") appeals from an adverse order entered by the Circuit Court of Kanawha County on December 5, 2000, granting summary judgment to the Kanawha County Sheriff's Department ("Sheriff's Department"); the Kanawha County Commission; 911 Emergency Services; and the City of St. Albans (hereinafter collectively referred to as the "governmental Appellees"); and granting the motion to dismiss filed by Appellee Abbott's Garage and Wrecker Service ("Abbott's"). In the underlying action, Allstate complained of the methods used by the governmental Appellees in connection with requests for towing services, asserting that the call referral system was in violation of state antitrust laws; constituted a conspiracy to restrain trade; tortiously interfered with prospective business relationships; and was a breach of contract. Upon our full review of this matter, we find no error and, accordingly, affirm.

## I. Factual and Procedural Background

On May 21, 1999, Appellant[1] instituted a cause of action against the Appellees through which it sought both compensatory and injunctive relief in connection with the manner in which calls requesting towing services were distributed among the local towing companies. Allstate averred that a rotational method of call referrals was not being implemented and that Abbott's was receiving a disproportionate percentage of the calls initiated by the governmental Appellees involving towing requests.[2]

---

1. Although the suit was filed in the names of Allstate and Cecilia Sanson d/b/a Allstate, we refer to Allstate as a singular appellant for ease of discussion.

2. Allstate contends that the ration of towing calls received by Abbott's, as compared to those received by Allstate, was 4:1.

To clarify the averments stemming from the lack of a rotational method of call referrals,[3] we offer the following additional facts. In an attempt to reduce the number of complaints received from local towing companies, the Sheriff's Department established certain towing service rules and regulations on June 17, 1998. These rules provided for the use of a rotational method of contacting the towing companies and delineated certain safety requirements that were based on towing regulations adopted by the Public Service Commission ("PSC").[4] *See* 150 W.Va.C.S.R. § 9. The Sheriff's Department distributed a copy of these rules to every towing company in Kanawha County.

As part of its attempt to implement a rotational system of towing referrals, the Sheriff's Department informed all the towing companies of a meeting specifically scheduled for the purpose of working out the geographical boundaries necessary to implement the contemplated rotation list.[5] Due, however, to the inability of the towing companies to reach an agreement regarding the required geographical boundaries, such a system never eventualized. Consequently, the Sheriff's Department informed all the towing companies that a rotational system was not going to

be used and that the long-standing practice of utilizing the nearest towing company to the stranded vehicle, or alternatively, the company specifically requested by a particular motorist, would again be the standard operating practice. The decision not to implement a rotational system of towing call referrals prompted the filing of Allstate's complaint below.[6]

Shortly after Allstate filed the underlying lawsuit, Abbott's filed a motion seeking dismissal for failure to state a claim.[7] After engaging in discovery that was limited to interrogatory requests and answers, the respective governmental Appellees filed motions for summary judgment, wherein they argued that summary judgment was appropriate on two separate bases: (1) the failure of Allstate to establish a genuine issue of material fact; and (2) a legal defense of immunity arising under the provision of the Governmental Tort Claims and Insurance Reform Act that extends immunity in connection with the methods of providing law enforcement. *See* W.Va.Code § 29–12A–5(a)(5) (1986) (Repl.Vol.2001).[8]

After holding two hearings on the propriety of the pending motions for dismissal and summary judgment, the circuit court ruled

---

**3.** The alleged rotational system only involved the Sheriff's Department, as the City of St. Albans has never established towing rules and regulations. The City of St. Albans has a long-standing policy with regard to contacting towing companies, which involves the following criteria: (1) the location of the towing company to the disabled vehicle; (2) the availability of the towing company; and (3) the vehicle's owner request for a specific company.

**4.** The PSC exercises limited regulatory authority with regard to the towing companies: rate setting for third-party tows; issuing of licenses; and promulgation of safety rules and standards. Whereas the PSC formerly regulated the number of towing companies that could operate in a particular area, this authority no longer exists.

**5.** Allstate did not attend this meeting, which was held on May 20, 1999; did not send a representative on its behalf; and did not notify the Sheriff's Office of its inability to attend the meeting.

**6.** Without taking a position as to the effect of this legislation on the matter before us, we note that West Virginia Code § 24–6–12 (2001) now addresses the dispatching of towing services for emergency towing of vehicles and provides that:

(a) Every three years, the county commission of each county or the municipality operating an emergency telephone system or an enhanced emergency telephone system shall, in consultation with all public safety units, public agencies and all available towing services registered as common carriers pursuant to the provisions chapter twenty-four-a of this code, *establish a policy that provides for the most prompt, fair, equitable and effective response to requests or dispatches for emergency towing services.*

(b) For each incident where towing services are required, the public agency procuring towing services shall maintain a public record of the name of the towing service utilized.

*Id.* (emphasis supplied). This legislation went into effect on July 12, 2001, ninety days after the passage of Senate Bill 461. *See* W.Va. Acts 2001, ch. 122.

**7.** *See* W.Va.R.Civ.P.12(b)(6).

**8.** This provision of the Act provides immunity in connection with "the method of providing, police, law enforcement or fire protection." W.Va. Code § 29–12A–5(a)(5).

that there was "no genuine issue of material fact regarding the allegations against the governmental defendants," after finding that Allstate had "presented no evidence of a monopoly, conspiracy or tortious interference with business relationships by the Public Defendants or Abbotts." The lower court further found that the governmental Appellees were entitled to immunity pursuant to West Virginia Code § 29–12A–5(a)(5) for all of the claims asserted against them by Allstate. In addition to granting the summary judgment motions, the circuit court granted Abbott's motion to dismiss. Allstate seeks a reversal of these dispositive rulings and a trial on the merits of the case.

## II. Standard of Review

■ With regard to the lower court's grant of summary judgment to the governmental Appellees, our review is *de novo. See* Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Similarly, "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). We proceed to consider whether the lower court committed error in granting the dispositive motions at issue.

## III. Discussion

### A. Summary Judgment

■ It is axiomatic that:

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992). We explained in syllabus point two of *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995), that

[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such

as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

■ With regard to the burden of responding to a motion for summary judgment, we articulated in *Williams* that

[i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

194 W.Va. at 56, 459 S.E.2d at 333, syl. pt. 3.

■ The only evidentiary response that Allstate made to the governmental Appellees' motions for summary judgment was to submit an affidavit prepared by trial counsel. This affidavit contains averments that, based on trial counsel's review of information provided during discovery concerning the period of July 1995 to April 1997, only 37 towing calls were received by Allstate, as compared to 162 by Abbott's. In limiting its evidentiary response to an affidavit that focused solely on the numerical disparity of towing calls between Allstate and Abbott's, Allstate clearly failed to meet its evidentiary burden of production. By singularly relying on this affidavit, which did not provide evidence supportive of the allegations of monopoly; restraint of trade; conspiracy; or tortious interference with business relationships, Allstate failed to comply with any of the three methods established in *Williams* for challenging a party's evidentiary-based motion for summary judgment. *See* 194 W.Va. at 56, 459 S.E.2d at 333, syl. pt. 3.

■ Under Rule 56, the absence of a genuine issue of material fact that is demonstrated by the pleadings; depositions; admissions; and affidavits entitles the moving party to summary judgment. It is well-settled that "the nonmoving party must take the

initiative and by affirmative evidence demonstrate that a genuine issue of fact exists." *Painter,* 192 W.Va. at 192, n. 5, 451 S.E.2d at 758, n. 5. The quantity of evidence necessary to defeat a motion for summary judgment is "more than a mere 'scintilla of evidence.'" *Id.* at 192, 451 S.E.2d at 758 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In this case, clearly nothing but a "'scintilla of evidence'" was produced in response to the governmental Appellees' motions for summary judgment. *Id.*

■ Notwithstanding our obligation to view the underlying facts and inferences in the light most favorable to the non-moving party, the nonmoving party must nonetheless offer some "'concrete evidence from which a reasonable ... [finder of fact] could return a verdict in ... [its] favor'" or other "'significant probative evidence tending to support the complaint.'" *Painter,* 192 W.Va. at 193, 451 S.E.2d at 759 *(quoting Anderson,* 477 U.S. at 256, 106 S.Ct. 2505 *quoting First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Upon our review of the record in this case, we agree with the lower court's determination that "the Plaintiffs presented no evidence of a monopoly, conspiracy or tortious interference with business relationships by the Public Defendants or Abbotts." Given the dearth of evidence offered in support of the averments set forth in the complaint, we find no error in the lower court's decision to grant summary judgment to the governmental Appellees. Based on the insufficient evidentiary response to the governmental Appellees' motion for summary judgment, we see no need to explore the second ground upon which summary judgment was moved for: legal immunity under West Virginia Code § 29–12A–5(a)(5).

## B. Motion to Dismiss

In deciding to grant Abbott's motion to dismiss, the lower court relied on Allstate's

failure to produce evidence in support of its various causes of action asserted against Abbott's. The lower court found that Allstate, despite its review of copious towing records and its "opportunity to produce affidavits in support of [its]... allegations that Abbott's conspired with the governmental defendants," "no such evidence has been produced." The lower court similarly found that Allstate "failed to produce any evidence of any business relationship in which Abbott's has interfered." Based on these findings, the lower court concluded that Allstate had "failed to state a claim against Abbott's upon which relief may be granted." [9]

Due to the fact that the circuit court considered matters outside the pleadings when ruling on Abbott's motion to dismiss, the motion was converted to a motion for summary judgment under the provisions of Rule 12(b) of the West Virginia Rules of Civil Procedure. *See* W.Va.R.Civ.P.12(b) (stating that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"); *accord Easterling v. American Optical Corp.,* 207 W.Va. 123, 128, 529 S.E.2d 588, 593 (2000). Notwithstanding this procedural conversion, we find no error in the lower court's decision to grant judgment to Abbott's based on the paucity of evidence with regard to the claims brought by Allstate against Abbott's. Allstate simply failed to present a genuine issue of fact with regard to its claims against Allstate. *See* W.Va.R.Civ.P.56.

Based upon our review of this matter against the record submitted, we find no error and, accordingly, affirm the decision of the Circuit Court of Kanawha County.

Affirmed.

---

9. The circuit court also found that, due to the immunity of the governmental Appellees under West Virginia Code § 29–12A–5(a)(5), there was no party with whom Abbott's could be found to have conspired to create a monopoly, as a matter of law. Given our decision not to address the issue of immunity with regard to the granting of summary judgment, we similarly do not address it with regard to the motion to dismiss.

**232**

McGRAW, Justice, dissenting:

(Filed July 3, 2002)

I disagree with the majority that the evidence presented in this case is not sufficient to produce a genuine issue as to a material fact.

In *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), Justice Cleckley noted "This Court will reverse summary judgment if we find, after reviewing the entire record, a genuine issue of material facts exists or if the moving party is not entitled to judgment as a matter of law. *In cases of substantial doubt, the safer course of action is to deny the motion and to proceed to trial.*" (emphasis added) *Id.* at 59, 459 S.E.2d 329. It was further stated that "we must draw any permissible inference from the underlying facts in the most favorable light to the party opposing the motion...as credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986)). *Id.*

In the instant case, I believe Allstate Wrecker presented sufficient evidence to support its claim. The evidence put forth indicates Abbott's received a significantly higher percentage of calls from the 911 Emergency Service, which appears to contradict the Sheriff's Department's self-proclaimed, longstanding practice of calling whichever towing service was geographically closer. Additionally, further evidence was submitted by Allstate challenging the City of St. Albans' contention that the city alternated calls between the two companies. City records obtained by Allstate Wrecker indicated Abbott's received almost twice as many calls as Allstate. This evidence alone could lead a reasonable jury to find that appellees have significant control over the relevant market in Kanawha County, and therefore, the case should not have been dismissed on summary judgment.

In *Barrett v. Fields, et al.*, 924 F.Supp. 1063 (D.Kan.1996), where a claim was brought against the county sheriff and other department officials alleging conspiracy to restrain wrecker business, the court dismissed a motion for judgment as a matter of law based on evidence suggesting the sheriff's department dispatched approximately 50% of all calls for towing services. The plaintiff's evidence indicated that during a four-year period, two particular wrecker services received 85% of the calls from the sheriff's department while the other four towing companies divided the remaining 15% among them. The court held "the jury could easily determine the defendants restrained competition for tow services...and that the restraint substantially injured competition in the market with little or no legitimate business justification." *Id.* at 1075.

Although I recognize summary judgment as a valuable litigation tool that promotes judicial economy, it is no substitute for a jury trial, and should only be used in the proper circumstances. "[T]he inquiry the court must make is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Williams*, 194 W.Va. at 61, 459 S.E.2d 329. The evidence present here is not so one-sided, therefore, I respectfully dissent.