640 S.E.2d 217

**Larry D. ELMORE, Individually and as Administrator of the Estate of Dorothy Mae Elmore, Deceased, Plaintiff Below, Appellant**

v.

**TRIAD HOSPITALS, INC., a Delaware Corporation, d/b/a Greenbrier Valley Medical Center; John M. Johnson, D.O.; and BJSM Med, Inc., a West Virginia Corporation, Defendants Below Appellees.**

No. 33006.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 2006.

Decided Nov. 16, 2006.

Concurring and Dissenting Opinion of Justice Benjamin Dec. 14, 2006.

**156**

Julie N. Garvin, Robert P. Welsh, Masters & Taylor, Charleston, for the Appellant.

Barry M. Taylor, Max L. Corley, III, Jenkins Fenstermaker, PLLC, Huntington, for the Appellee, John M. Johnson, D.O.

PER CURIAM:

This case involves the appeal by Larry D. Elmore (hereinafter referred to as "Appellant"), individually and as administrator of the estate of Dorothy Mae Elmore, of the June 16, 2005, order of the Circuit Court of Greenbrier County by which his medical malpractice complaint against John M. Johnson, D.O. (hereinafter referred to as "Appellee")[1] was dismissed without prejudice. Appellant alleges that the lower court incorrectly determined that dismissal was required because Appellant failed to adequately comply with the pre-suit notice of claim requirements of the Medical Professional Liability Act (hereinafter referred to as "MPLA"). Having carefully considered the briefs and arguments of the parties, the record certified to this Court and the applicable law, we reverse the decision of the court below and remand the case for reinstatement and further proceedings.

### I. Factual and Procedural Background

Appellant's complaint alleged that Appellee committed medical malpractice by failing to diagnose Appellant's wife, Dorothy Mae Elmore, as suffering from sepsis and thus causing her death. Appellee had treated Mrs. Elmore on February 16, 2002, in the emergency room of the Greenbrier Valley Medical Center (hereinafter referred to as "GVMC"). Appellee works at GVMC pursuant to a contract with BJSM Med, Inc. (hereinafter referred to as "BJSM"); Appellee is both an employee of BJSM and the president of the company.

On May 30, 2003, Appellant sent the pre-suit notification and screening certificate of merit as required by West Virginia Code § 55–7B–6 (2001)[2] to Appellee at GVMC by certified mail, return receipt requested. The return from the certified mailing showed that a GVMC employee[3], Teresa Shinn–Morgan, signed for the subject correspondence on May 31, 2003. According to an affidavit of Ms. Shinn–Morgan dated February 26, 2004, the materials were "placed into the hospital's internal mail and correspondence delivery system" for delivery to Appellee's mailbox at GVMC. Appellee maintains that he did not work at GVMC on May 31, 2003, and actually received the pre-suit materials on June 4, 2003, on his next scheduled day to work at the facility. Appellee did not respond in any way to the notice. Appellant proceeded to file a medical malpractice suit, naming Appellee as one of the defendants, on June 30, 2003. The date the suit was filed was thirty-one days after the mailing of the notice and certificate, which was also one day before the

---

1. Appellant had initially notified three medical providers regarding this medical malpractice action; in addition to Dr. Johnson, Triad Hospitals, Inc., d/b/a Greenbrier Valley Medical Center and BJSM Med, Inc. were also proceeded against. The two corporate entities were dropped from the claim and are not involved in this appeal.

2. *See* 2001 Acts of the Legislature of West Virginia, 6th ex. sess., ch. 19. West Virginia Code Article 7B of Chapter 55 was amended in 2003, with the specific provision that the 2003 amendments be applied to all medical professional liability cases filed on or after July 1, 2003. W.Va. Code § 55–7B–10 (b) (2003) (Supp.2006). The 2001 version of the MPLA was the version of the statute in effect at the time the initial notice and certificate were sent by Appellant.

3. The portion of the record certified to this Court contains two affidavits of Ms. Shinn–Morgan, one dated March 9, 2004, and the other dated February 26, 2004. The March affidavit was attached as an exhibit to "Plaintiff's Motion for Reconsideration," stamped as filed on March 10, 2004, and the February affidavit was attached as an exhibit to "Defendant's John M. Johnson, D.O.'s Response to Plaintiff's Motion for Reconsideration," stamped as filed February 27, 2004. In the affidavits Ms. Shinn–Morgan related that she had been an employee of GVMC for over five years and that she was working as a refund clerk or refund clerk/mail clerk in the GVMC business office when she signed for the certified letter.

2003 amendments to the MPLA, including the statutory cap on damages, went into effect.[4]

Appellee filed a motion to dismiss the complaint pursuant to Rule 12, subsections (b)(1) and (b)(6), of the West Virginia Rules of Civil Procedure,[5] arguing that the court lacked subject matter jurisdiction because suit was filed prior to the expiration of the mandatory thirty-day pre-suit notice period set forth in West Virginia Code § 55–7B–6 (b). In essence, Appellee argued that because GVMC was not his employer or his agent for receipt of certified mail or service of process, and because his business and personal addresses are separate from GVMC's address, he could not be considered served with the pre-suit notice package until he actually received it on June 4, 2003, which was only twenty-six days before the complaint was filed. At a December 22, 2003, hearing on the dismissal motion, the lower court granted dismissal without prejudice, finding that Appellee had not been afforded the full thirty-day notice as required by the statute. Prior to entry of an order reflecting that ruling, Appellant filed a motion requesting that the court reconsider its

dismissal decision, contending that an agency relationship between Ms. Shinn–Morgan and Appellee demonstrated that service was complete upon Ms. Shinn–Morgan signing the return receipt for the certified mailing. In its order dated June 16, 2005, the lower court recited the above-noted reasons for initially granting the dismissal motion in December 2003, and then affirmed that ruling "because no fact has been presented to or exists before this Court to support an employment, authorized agency relationship or apparent agency relationship between Ms. Shinn–Morgan and Dr. Johnson."

Appellant then filed his appeal from the June 16, 2005, order of dismissal without prejudice with this Court on December 27, 2005.[6] This Court granted review on February 16, 2006.

## II. Standard of Review

▮ This appeal involves the lower court's ruling regarding dismissal of a claim, without prejudice, pursuant to subsections (b)(1) and (b)(6) of Rule 12 of the West Virginia Rules of Civil Procedure.[7] "Appel-

---

4. *Supra* n. 2.

5. Rule 12(b) of the West Virginia Rules of Civil Procedure reads as follows:

 (b) *How Presented.*—Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and dis-

 posed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

6. Appellant also refiled his suit against Appellee within the statute of limitations period in order to preserve his action should this appeal not result in reinstatement. Since the second action was filed after the effective date of the 2003 amendments to the MPLA, the second action would be subject to the statutory cap on damages as set forth in West Code § 55–7B–8 (2003) (Supp.2006).

7. Appellee suggests in a footnote of his brief that a summary judgment standard of review may apply to this appeal because the court below relied on materials outside of the pleadings and dismissal was granted, in part, on Rule 12(b)(6) grounds. Indeed, the June 16, 2005, order confirms that the lower court went beyond the pleadings and considered the affidavits of Teresa Shinn–Morgan in reaching its decision. However, we find that the dismissal decision centered on the lower court's belief that it lacked jurisdiction to proceed causing the "failure to state a claim upon which relief can be granted." W.Va. R. Civ. P. 12(b)(6). In *Easterling v. American Optical Corp.*, 207 W.Va. 123, 529 S.E.2d 588 (2000), we found that a majority of federal courts applying the comparable federal rule do not con-

late review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). This same standard applies to our study of the lower court's interpretation of the MPLA. As we held in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), "[w]here the issue on appeal from the circuit court is clearly a question ... involving an interpretation of a statute, we apply a *de novo* standard of review."

## III. Discussion

 This appeal is one in a series of cases in which we have been called upon to clarify what constitutes adherence to the pre-suit notice of claim and screening certificate of merit requirements legislatively prescribed in the MPLA at West Virginia Code § 55–7B–6. The instant case presents the principal issue of determining when the thirty-day pre-suit period begins to run in order to satisfy statutory intent.[8]

Appellant maintains that the lower court erred in determining when service is accomplished pursuant to West Virginia Code § 55–7B–6. The requirements involving service of the pre-suit notice are addressed in subsection (b) in the following way:

> At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

vert a motion to dismiss on jurisdictional grounds to a motion for summary judgment. We summarized the rationale behind this majority trend by relying on the following quote from Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2713, at 239–40 (1998):

"[I]f the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action. In addition, a dismissal for want of jurisdiction has no preclusive effect and the same action subsequently may be brought in a court of competent jurisdiction. A summary judgment, on the other hand, is on the merits and purports to have preclusive effect on any later action. The court's role on the two motions is also different. On a motion attacking the court's jurisdiction, the ... judge may resolve disputed jurisdictional-fact issues. On a motion under Rule 56 the judge simply determines whether any issues of material fact exist that require trial."

*Easterling* at 128–29, 529 S.E.2d at 593–94. We concluded in syllabus point four of *Easterling* that "[a] motion under Rule 12(b)(2) of the West Virginia Rules of Civil Procedure [relating to dismissal for lack of personal jurisdiction] cannot be converted to a Rule 56 motion for summary judgement, even though a trial court considers matters outside the pleadings in deciding the Rule 12(b)(2) motion." A motion for dismissal based on Rule 12(b)(1) grounds, being jurisdictional, merits the same treatment.

8. In his response, Appellee also alleges problems with the certificate of merit. The lower court did not rule on issues related to the certificate of merit in its order of dismissal, and "this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken." Syl. Pt. 1, *Mowery v. Hitt*, 155 W.Va. 103, 181 S.E.2d 334 (1971).

(Emphasis added.) As reflected in the June 16, 2005, order, the lower court also relied on the following two subsections of West Virginia Code § 55–7B–6 to arrive at its conclusion that Appellant did not complete proper pre-suit notice pursuant to the statute:

(e) Any health care provider who receives a notice of claim pursuant to the provisions of this section may respond, in writing, to the claimant or his or her counsel within thirty days of receipt of the claim or within thirty days of receipt of the screening certificate of merit if the claimant is proceeding pursuant to the provisions of subsection (d)[9] of this section. The response may state that the health care provider has a bona fide defense and the name of the health care provider's counsel, if any.

(f) Upon receipt of the notice of claim or of the screening certificate of merit, if the claimant is proceeding pursuant to the provisions of subsection (d) of this section, the health care provider is entitled to prelitigation mediation before a qualified mediator upon written demand to the claimant.

In reliance on these provisions the lower court concluded, as reflected in the June 16, 2005, order, that:

7. The statutory language of § 55–7B–6, when read as a whole, demonstrated the West Virginia Legislature's intent that thirty (30) days elapse after a health care provider has received a Notice of Claim and Screening Certificate via certified mail before an action may be commenced. The statute required a claimant to afford the health care provider adequate time to evaluate the claim and to choose to pursue prelitigation mediation after being served and in receipt of a proper Notice of Claim and Screening Certificate. *See* West Virginia Code § 55–7B–6(e) and (f); *State ex rel. Miller v. Stone* at 490. Thus, a health care provider would be denied the full opportunity to respond to a notice of claim prescribed by the Legislature prior to a lawsuit being filed if the mailing date, rather than the date of receipt, controlled.

8. Service of the Notice of Claim and Screening Certificate of Merit upon a health care provider is perfected upon actual receipt of the same by the health care provider or his authorized agent for service of process. W.Va.Code § 55–7B–6(e) and (f).

9. Further, service of the Notice of Claim and Screening Certificate of Merit is not perfected upon mailing or upon receipt by an individual who is not an authorized agent of the healthcare provider.

■■■ The trial court's order highlights the practical problems with the structure of the pre-suit notice provisions of the MPLA in relation to the problem raised in the present case. The provisions of West Virginia Code § 55–7B–6 at issue separately address the rights and duties of claimants in subsection (b) and the rights and duties of health care providers in subsections (e) and (f). All of these subsections refer to a thirty-day period, but the point at which the periods begin to run are inconsistent between claimants and health care providers. In subsection (b), the measurement of the thirty-day period begins on the date the notice of intent is *served by certified mail,* and in subsections (e) and (f), the measurement of the time periods therein begins on the date the notice is *received* by the health care provider. The lower court attempted to resolve this inconsistency by doing that which the Legislature neglected to do—define the term "serve." In so doing, the court below imposed the term-of-art definition of serve adopted for judicial proceedings and thus balanced the equities in favor of the health care provider. We find this solution to be untenable as courts cannot impose such judicially defined procedures to an activity which the Legislature has explicitly placed outside the judicial arena. This Court's constitutional authority to promulgate procedural rules regarding process is expressly limited to "cases and proceedings, civil and criminal, for all of the courts of the State." W.Va. Const. Art. VIII, § 3; *see*

---

**9.** Although unrelated to the issue at hand, for clarity we note that West Virginia Code § 55–7B–6 (d) addresses situations when a screening certificate of merit can not be obtained before the expiration of the statute of limitations.

*also* W.Va.Code § 51–1–4 (1935) (Repl. Vol. 2000) ("The supreme court of appeals may, from time to time, make and promulgate general rules and regulations governing pleading, practice and procedure in such court and in all other courts of record of this State."). Moreover, as a court of limited jurisdiction, this Court can only act when authority to do so has been constitutionally or statutorily granted. Syl. Pt. 1, in part, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995) ("This Court's jurisdictional authority is either endowed by the West Virginia Constitution or conferred by the West Virginia Legislature."). No such apparent authority exists here. Accordingly, this Court may require no more as to service of an MPLA pre-suit notice than is stated in the statute. As a result, since the Legislature has reserved the authority in this province, only the Legislature may provide any further clarification regarding the method of service or direction regarding reconciliation of the various provisions of West Virginia Code § 55–7B–6. In consideration of the law and facts, dismissal of Appellant's suit was erroneous.

▬ Under these circumstances we have no choice but to apply the statute as written. In the provisions of the MPLA, the Legislature has made its intent clear that certain prerequisites occur before a complainant may initiate a medical malpractice action in the courts. W.Va.Code 55–7B–6 (a). Among the prerequisites the Legislature set forth is the requirement that "[a]t least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation." W.Va. Code § 55–7B–6 (b). It is undisputed that Appellant deposited in the mail the notice of claim by return-receipt certified mail, thirty-one days before filing a medical malpractice suit in the circuit court. Absent further legislative prescription by definition of the term "serve," including direction about where a health care provider must be served or similar technicalities regarding perfection of service, Appellant complied with the plain meaning of the MPLA when he mailed the notification package by certified mail, return receipt requested, to Appellee's place of work.[10] Furthermore, we find no reason to penalize Appellant with dismissal of his suit when the record fails to show that Appellant was not acting in good faith or otherwise was neglecting to put forth a reasonable effort to further the statutory purposes. As we said in syllabus point six of *Hinchman v. Gillette*, 217 W.Va. 378, 618 S.E.2d 387 (2005), an opinion released roughly two weeks after the lower court issued its ruling,

In determining whether a notice of claim and certificate are legally sufficient, a reviewing court should apply *W.Va.Code*, 55–7B–6 [2003][11] in light of the statutory purposes of preventing the making and filing of frivolous medical malpractice claims and lawsuits; and promoting the pre-suit resolution of non-frivolous medical malpractice claims. Therefore, a principal consideration before a court reviewing a claim of insufficiency in a notice or certificate should be whether a party challenging or defending the sufficiency of a notice and certificate has demonstrated a good faith and reasonable effort to further the statutory purposes.

We also stressed in *Hinchman* that "[t]he requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts." *Id.*, Syl. Pt. 2, 618 S.E.2d 387, in part. Thus our review of the application of the MPLA pre-suit notice statute involves a balanced consideration of not only the rights

10. The record shows that a few days after mailing the pre-suit notice to GVMC as Appellee's workplace, Appellant became aware that Appellee was employed by BJSM. Appellant then mailed an additional packet of the pre-suit materials to the BJSM address.

11. We merely point out that although the 2001 version of the MPLA applied to the case underlying *Hinchman*, it was related in footnote one of that opinion that the 2003 provisions of West Virginia Code § 55–7B–6 were relied upon because the notice requirements were only slightly modified in unsubstantial ways by the 2003 amendments to the Act. As the same applies to the instant case, we will follow the same course.

of the health care provider but also the rights of the claimant. There is nothing in the record to suggest—and Appellee does not allege—that Appellant's claim is frivolous or that his actions impeded pre-suit resolution of the claim.

Accordingly, both in using care not to intrude upon the power the Legislature has reserved in this area and in furthering the principles announced in *Hinchman,* we find that the lower court erred in dismissing this suit because Appellant complied with the express statutory notification process.[12]

Nevertheless, it is clear under the provisions of West Virginia Code § 55–7B–6 that the Legislature intended that a health care provider be given thirty days to evaluate the claim and in which to assert his statutory right to invoke pre-suit mediation in order to resolve the claim. Respecting this statutory requirement, upon remand the court below should honor a request, made by Appellee within a reasonable time period, to mediate the claim before the case proceeds in court.

## IV. Conclusion

Based upon the foregoing analysis, the June 16, 2005, order of the Circuit Court of Greenbrier County is reversed and this matter is remanded to the lower court for the suit to proceed in conformity with this opinion.

Reversed and remanded.

DAVIS, Chief Justice, concurring.

In this case, the plaintiff's complaint was dismissed *solely* upon the grounds that he did not serve a notice of claim on the defendant, thirty days before filing the action, as required by the Medical Professional Liability Act. The majority opinion reversed the dismissal on the grounds that the defendant

has been properly served with pre-suit notice. I concur in the judgment, but I respectfully reject the reasoning used by the majority opinion to reach this result.

In resolving this case, the majority found it necessary to indicate that the presuit notice requirements of the Act are valid and outside the scope of this Court's constitutional authority to promulgate rules of procedure for trial courts. This reasoning "is merely gratuitous (and unwise) dicta." *State ex rel. Stump v. Johnson,* 217 W.Va. 733, 744, 619 S.E.2d 246, 257 (2005) (Starcher, J., dissenting). I am particularly troubled by this dicta because in the recent opinion of *Davis v. Mound View Health Care, Inc.,* 220 W.Va. 28, 640 S.E.2d 91, 2006 WL 3257443 (2006) (Davis, C.J., dissenting), this Court expressly declined to address the issue of whether the Legislature had the constitutional authority to promulgate the pre-suit notice requirements under the Act. Consequently, it is inappropriate for the per curiam opinion in this case to attempt to constitutionally validate the pre-suit notice requirements, when the Court has expressly declined to address the issue in the authored opinion of *Davis.* As pointed out by Justice Albright in Syllabus point 2 of *Walker v. Doe,* 210 W.Va. 490, 558 S.E.2d 290 (2001), "[t]his Court will use signed opinions when new points of law are announced and those points will be articulated through syllabus points as required by our state constitution." The dicta language in the majority opinion should be construed as nothing more than dicta, and not the decision of the Court on the important issue of whether or not the pre-suit notice requirements are an encroachment upon our constitutional authority to promulgate rules of procedure for the trial courts of this State.

---

12. The lower court relied upon the per curiam opinion of *State ex rel. Miller v. Stone,* 216 W.Va. 379, 607 S.E.2d 485 (2004), in reaching its decision. In *Stone,* the technicalities of what constitutes pre-suit service within the meaning of the MPLA was not discussed. Rather, in *Stone* we examined whether the delayed delivery of a certificate of merit permitted under West Virginia Code § 55–7B–6(d) bears on the time within which an affiliated malpractice suit may be filed. The claimant in *Stone* filed suit thirty days after mailing of the pre-suit notice but the certificate

of merit was not transmitted until after the malpractice suit was filed. We concluded in *Stone* that under these circumstances the health care provider was completely foreclosed from the statutory right afforded the health care provider to demand pre-litigation mediation because the provider did not know the theories of liability alleged by the claimant and, consequently, could not make an informed decision regarding mediation. Based upon the record before us, this is not the situation in this case.

Finally, for the reasons set out in my concurring opinion in *Hinchman v. Gillette*, 217 W.Va. 378, 387, 618 S.E.2d 387, 396 (2005) (Davis, J., concurring), I believe the pre-suit notice requirements are unconstitutional. Therefore, I would have reversed this case upon that ground.

Consequently, I respectfully concur.

BENJAMIN, Justice, concurring, in part, and dissenting, in part.

I dissent from the majority opinion in this matter to the extent it indicates that receipt of a notice of claim by a person having *absolutely no authority, express or implied,* to accept the same on behalf of a medical provider is sufficient to satisfy the requirements of W. Va.Code § 55–7B–6 (2001). The Appellant mailed, via certified mail, his notice of claim as to Dr. Johnson to Greenbrier Valley Medical Center (hereinafter "GVMC"). This notice of claim was signed for by GVMC employee Teresa Shinn–Morgan. Ms. Shinn–Morgan worked in the GVMC business office as a refund clerk/mail clerk. Dr. Johnson provides emergency medical services in the GVMC emergency room by virtue of GVMC's contract with BJSM, Inc. (hereinafter "BJSM"). Dr. Johnson is an employee of BJSM, not GVMC. The record contains no evidence that GVMC or its employees had actual or apparent authority to act or accept service on behalf of Dr. Johnson. Therefore, neither GVMC nor Ms. Shinn–Morgan had the authority to accept the notice of claim on Dr. Johnson's behalf. The majority erred by implying that such authority existed.

Even assuming, arguendo, that an apparent agency relationship might exist between Dr. Johnson and GVMC under this Court's case law, the same is not, in my view, sufficient to permit GVMC to accept any form of service on behalf of Dr. Johnson. *See, Burless v. West Virginia University Hospitals, Inc.*, 215 W.Va. 765, 601 S.E.2d 85 (2004) (finding apparent agency relationship may exist between physician and hospital in certain situations where there is no actual agency relationship); *Torrence v. Kusminsky*, 185 W.Va. 734, 408 S.E.2d 684 (1991) (finding emergency room physician may be deemed ostensible agent of hospital where no actual agency relationship exists). Such a relationship may permit the hospital to be held liable for the acts of the physician, but it does not permit the hospital to act on behalf of the physician. I have been unable to locate a single case permitting a hospital to accept service on behalf of an emergency room physician. To the contrary, courts uniformly reject such service. *See, Jackson v. County of Nassau*, 339 F.Supp.2d 473 (E.D.N.Y.2004) (Under New York law, a county medical center's designated agent was not authorized to accept service of process for physician formerly employed by the medical center, absent evidence that he was ever appointed as physician's agent for service of process or for any other purpose.); *Neely v. Eshelman*, 507 F.Supp. 78 (D.C.Pa. 1981) (quashing service of process upon physician where complaint was served on individual at the hospital other than the physician and the physician did not have an authorized agent for service at the hospital); *Brown v. Carolina Emergency Physicians, P.A.*, 348 S.C. 569, 560 S.E.2d 624 (Ct.App. 2001) (under South Carolina law, plaintiffs' service of process was ineffective for purposes of medical malpractice action brought against company employing emergency room doctor, hospital, and emergency room doctor where service was made upon employee of the hospital who was not authorized to accept service on behalf of company or doctor); *C.f., LaPalme v. Romero*, 621 N.E.2d 1102 (Ind.1993) (service upon manager of defendant's employer was insufficient as to defendant because employer did not have legal authority to accept service on behalf of defendant). Simply put, the mere mailing of a notice of claim to a hospital where a physician provides medical services cannot suffice to establish service of the notice of claim upon the physician unless the notice is received by a person designated by the physician as having the authority to accept such service on the physician's behalf. The purpose of the notice of claim provision found in W. Va.Code § 55–7B–6 is to provide notice to the physician of an impending medical malpractice claim and to provide the physician with thirty days in which to respond before suit is filed. Recognizing

that the Legislature failed to define the term "service" as used in W. Va.Code § 55–7B–6, I do not believe that providing notice to a person who is a non-authorized agent of the physician in the hopes that it will eventually reach the physician himself can, by any stretch of the imagination, satisfy the legislature's intent under any definition of service.

Although I dissent to the majority's determination that the notice at issue was properly served upon Dr. Johnson, I agree and concur with the majority's discussion regarding the legislature's authority with respect to pre-suit notice of claims as a pre-requisite to filing a medical malpractice action. The legislature is empowered to define common law causes of action, including prerequisites which must be satisfied before a court's jurisdiction to entertain the action is triggered.