IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 22-0158

_____

FILED

**November 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WILLIAM SAGER,
Plaintiff Below, Petitioner,

v.

DR. JOSEPH DUVERT, TYGART VALLEY TOTAL CARE CLINIC, and
GRAFTON CITY HOSPITAL, INC.,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Taylor County
The Honorable Alan D. Moats, Judge
Civil Action No. 20-C-35

AFFIRMED

_____

Submitted:  September 26, 2023
Filed:  November 8, 2023

Joseph H. Spano Jr., Esq.
Pritt & Spano, PLLC
Charleston, West Virginia
Counsel for Petitioner

Brent P. Copenhaver, Esq.
Dana Hantel, Esq.
Linkous Law, PLLC
Morgantown, West Virginia
Counsel for Respondents

JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed."  Syllabus Point 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

2.      "A circuit court's entry of summary judgment is reviewed *de novo*."  Syllabus Point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

3.      "Pursuant to W. Va. Code § 55-7B-6 (a) and (b) [2003], no person may file a medical professional liability action against any health care provider unless, at least thirty days prior to the filing of the action, he or she has served, by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation."  Syllabus Point 4, *State ex rel. PrimeCare Medical of West Virginia, Inc. v. Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019).

4.      "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment."  Syllabus Point 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

i

5.	"The failure of a healthcare provider to unequivocally decline pre-suit mediation in a response to a notice of claim does not serve to toll the statute of limitations beyond the statutorily prescribed time periods set forth in the provisions of West Virginia Code § 55-7B-6(i)." Syllabus Point 2, *Adkins v. Clark*, 247 W. Va. 128, 875 S.E.2d 266 (2022).

6.	West Virginia Code § 55-7B-6(d), where applicable, provides a plaintiff in an action filed pursuant to the Medical Professional Liability Act sixty days to provide a screening certificate of merit if a plaintiff or his or her counsel "has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations."

**ARMSTEAD, Justice:**

On October 13, 2020, Petitioner William Sager filed suit against Respondents asserting medical negligence pursuant to the West Virginia Medical Professional Liability Act (hereinafter "MPLA"). Petitioner asserted that Respondents overprescribed and improperly filled prescriptions for controlled substances which were known to have addictive qualities and, in doing so, caused him to develop a debilitating addiction to pain medication. West Virginia Code § 55-7B-4 requires a medical negligence cause of action to be commenced within two years of the date of an injury or "within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such medical injury." Respondents filed motions to dismiss Petitioner's case asserting that Petitioner's complaint was filed after the expiration of the applicable statute of limitations. After arguments of counsel and extensive briefing, the circuit court converted Respondents' motions to dismiss to motions for summary judgment and granted summary judgment in favor of Respondents. Petitioner sought to alter or amend the circuit court's judgment pursuant to Rule 59(e), and the motion was denied. Petitioner appeals the circuit court's denial of the Rule 59(e) motion.

After careful review of the record before us, the parties' briefs and oral arguments, and the applicable law, we conclude that the circuit court did not err by granting summary judgment in favor of Respondents. Accordingly, we affirm the circuit court's order.

1

## I.  FACTUAL AND PROCEDURAL HISTORY

Petitioner was involved in a motor vehicle accident in 2003.  He alleges that the motor vehicle accident caused him to experience lower back and shoulder pain for which he sought treatment from Respondents.  Petitioner was treated by Respondents from 2003 through February 2018.[1]

On or about December 13, 2017, Petitioner was arrested after he allegedly got into an argument with his girlfriend and discharged a firearm inside a residence.  He was indicted for domestic assault and wanton endangerment involving a firearm for this incident.  The circuit court found that it was Petitioner's "initial indictment in January 2018 that set the wheels in motion for his treatment for substance abuse addiction in February 2018."

In February of 2018, Petitioner sought medical detoxification at United Hospital Center Rehabilitation in Bridgeport, West Virginia.  According to Petitioner, he received concurrent treatment at the John D. Good Center and Cranberry Medical Clinic, and he completed that rehabilitation program in August of 2018.

---

[1] The circuit court found that February 2, 2018, was "the last date that [Petitioner] received treatment from [Respondents]."

In a letter dated May 1, 2018, Dr. Roger A. Lewis of the Cranberry Medical Clinic confirmed that Petitioner had "done well" in the detox center and that Petitioner "appear[ed] to be very committed to remaining drug free." Dr. Lewis also noted that "[Petitioner] reports his prior physician started him on these medications at a lower dose and gradually increased the medications over time without making him aware of the potential problems that they could cause." In the closing paragraph of his letter, Dr. Lewis also noted that "[i]n terms of his prescribed medications prior to entering the rehab facility, it certainly seems like excessive and unusual amounts to prescribe together and personally I would never prescribe that dosage or combination of medications for any patient. If you need further assistance do not hesitate to ask."[2] On May 7, 2018, it was "disclosed to the [circuit court] in the criminal cases against [Petitioner] that he had successfully completed the drug rehabilitation program to address the addiction that is the subject of this civil lawsuit."[3]

On May 11, 2018, Petitioner's counsel sent a letter to Grafton City Hospital requesting copies of Petitioner's medical records, and on July 12, 2018, Petitioner's counsel sent a letter to Dr. Duvert requesting copies of Petitioner's medical records. Both letters included an "Authorization to Disclose Health Information" that was executed by

---

[2] The May 1, 2018 letter was attached as an exhibit to Respondents' reply to Petitioner's response to the motion to dismiss.

[3] Order Granting [Respondents'] Motions to Dismiss/Motions for Summary Judgment at ¶ 3.

Petitioner on June 16, 2017, and both authorizations clearly indicated that the information being requested was "for the purpose of litigation or potential litigation[.]"

Petitioner served his first notice of claim[4] on January 22, 2020,[5] and he provided a statement of intent to provide a screening certificate of merit within 60 days.[6] On March 22, 2020, this Court entered an order declaring a judicial emergency regarding the COVID-19 crisis. On the following day, March 23, 2020, Petitioner served a second notice of claim that indicated, in part:

> Due to the COVID-19 pandemic, the Certificate of Merit for the [Respondents] will be delayed as our expert, Dr. Ranieri, lives and practices in the New Jersey/New York area which has seen an outbreak of the virus on a mass scale. Dr. Ranieri is involved in the care and treatment of COVID-19 patients.

---

[4] *See* W. Va. Code § 55-7B-6 (setting forth prerequisites for filing an action against a health care provider and requiring a notice of claim that includes a statement of the theory or theories of liability as well as a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit).

[5] This first notice of claim was addressed to various entities, including Respondents as well as individuals (pharmacies and pharmacists) not involved in the instant appeal.

[6] For plaintiffs who do not have time prior to the expiration of the statute of limitations to obtain and serve a screening certificate of merit with their notice of claim, West Virginia Code § 55-7B-6(d) affords those parties an additional sixty (60) days to obtain and serve a screening certificate of merit. *See* discussion, *infra*.

4

> Therefore, the Certificates of Merit will be provided at such time that the pandemic emergency has passed.[7]

In further response to the COVID emergency, this Court entered three subsequent administrative orders extending, among other things, certain deadlines, statutes of limitations and statutes of repose. An administrative order entered on May 6, 2020, provided, in part:

> Statutes of limitations and statutes of repose that would otherwise expire during the period of judicial emergency between March 23, 2020, and May 15, 2020, shall expire on May 18, 2020;
>
> \*\*\*
>
> Deadlines set forth in court rules, statutes (excluding statutes of limitation and repose), ordinances, administrative rules, scheduling orders, or otherwise that expired between March 23, 2020, and April 17, 2020, are hereby extended to May 29, 2020, unless otherwise ordered by the presiding judicial officer;
>
> \*\*\*
>
> Deadlines, statutes of limitations, and statutes of repose that do not expire during the period of judicial emergency between March 23, 2020, and May 15, 2020, are not extended or tolled by this or prior orders[.]

---

[7] According to the second notice of claim, Petitioner enclosed a screening certificate of merit for the pharmacies and pharmacists but not for Respondents in this appeal.

Petitioner served his third notice of claim on or about July 2, 2020.[8]  In the third notice of claim, Petitioner enclosed a screening certificate of merit from Dr. Joseph N. Ranieri dated June 29, 2020.

Petitioner filed his complaint against Respondents on October 13, 2020, in the Circuit Court of Taylor County.  He alleged that the negligence of the Respondents was the proximate cause of his addiction to controlled substances.  On December 8, 2020, Tygart Valley Total Care Clinic and Grafton City Hospital, Inc., filed a motion to dismiss Petitioner's complaint.  On December 28, 2020, Joseph Duvert, M.D., filed a motion to dismiss Petitioner's complaint.  Both motions alleged that Petitioner failed to comply with the deadlines and requirements established by the MPLA relating to the certificates of merit and filing of the complaint.  In addition, the motions alleged that because the Petitioner's complaint was filed after the statute of limitations had run, Petitioner's complaint failed to state a claim upon which relief could be granted.  A hearing on the outstanding motions to dismiss was held on September 2, 2021.  Following the hearing and supplemental briefing, the circuit court determined that the motions should properly be considered as motions for summary judgment and granted summary judgment in favor of Respondents.[9]  The circuit

_____

[8] Petitioner refers to his notices of claims by their date and also, at times, he refers to the March 23, 2020 and the July 2, 2020 notices as "revised."  For ease of reference, we will refer to them as his first, second, and third notices of claim.

[9] According to the order granting Respondents' motions for summary judgment, the circuit court reviewed supplemental responses from both parties that included "numerous additional exhibits and records."  Respondents requested that their motions to dismiss be

court concluded that pursuant to this Court's Administrative Order dated May 6, 2020, Petitioner was obligated to serve his screening certificate of merit no later than May 29, 2020, but he failed to do so. Further, the circuit court concluded that Petitioner failed to file his Complaint prior to the expiration of the applicable statute of limitations. Respondents were directed to prepare an order including findings of fact and conclusions of law reflecting the circuit court's ruling.

The order granting summary judgment in favor of Respondents was entered on November 19, 2021. On December 3, 2021, Petitioner filed a Rule 59(e) motion to alter or amend this judgment, and by order entered on January 27, 2022, the circuit court denied Petitioner's motion. Petitioner appeals the circuit court's denial of his motion to alter or amend the circuit court's judgment granting summary judgment in favor of Respondents.

## II. STANDARD OF REVIEW

Petitioner appeals the circuit court's January 27, 2022 order denying his "Rule 59(e) Motion to Alter or Amend Judgment." "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the

---

converted to motions for summary judgment, and the circuit court granted that motion. The general rule is that "[o]nly matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment[.]" Syl. pt. 3, in part, *Riffle v. C.J. Hughes Constr. Co.*, 226 W. Va. 581, 703 S.E.2d 552 (2010) (quotations and citations omitted).

7

motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

With these standards in mind, we turn to the parties' arguments.

### III. ANALYSIS

In order to determine whether the circuit court correctly ruled that Petitioner's claims were barred by the statute of limitations, we must review the timeline of events. Petitioner was involved in a motor vehicle accident in 2003, and he alleges that he sought treatment from Respondents for injuries that he sustained in that accident. Petitioner treated with Respondents until February 2018. Following his indictment on charges of wanton endangerment involving a firearm and domestic assault, Petitioner entered into a detoxification and drug rehabilitation program on or about February 2, 2018.

In a letter dated May 1, 2018, Dr. Lewis of the Cranberry Medical Clinic confirmed that Petitioner had "done well" in the detox center and that Petitioner "appear[ed] to be very committed to remaining drug free." During a hearing in Petitioner's criminal cases on May 7, 2018, it was represented to the circuit court that Petitioner had successfully completed his drug rehabilitation program. Four days later, on May 11, 2018,

8

counsel for Petitioner sent a letter to Respondent, Grafton City Hospital, Inc., requesting Petitioner's medical records. On July 12, 2018, counsel for Petitioner sent another records request to Dr. Duvert. Both of these requests included an "Authorization to Disclose Health Information" that was executed by Petitioner on June 16, 2017, and both authorizations clearly indicated that the information being requested was "for the purpose of litigation or potential litigation[.]"

On January 22, 2020, Petitioner served his first notice of claim on Respondents. For reasons more fully set forth *infra*, we find that the first notice of claim is the operative notice of claim in this case.[10] Petitioner filed his complaint against Respondents on October 13, 2020.

The parties agree that the MPLA applies to Petitioner's claims. The questions before us are whether Petitioner complied with the requirements of the MPLA and whether Petitioner filed his complaint prior to the expiration of the statute of limitations. Petitioner first argues that the circuit court erred by granting Respondents'

---

[10] Petitioner served a second notice of claim on March 23, 2020. The second notice of claim provided a screening certificate of merit for pharmacies and pharmacists, not Respondents, so it has no impact on the instant appeal. Petitioner's third notice of claim, which accompanied a screening certification of merit for the claims against Respondents, was served on or about July 2, 2020. For reasons more fully set forth *infra*, the third notice of claim was filed after the expiration of the statute of limitations and does not remedy Petitioner's untimely complaint.

motion for summary judgment by finding that he filed his complaint after the expiration of the statute of limitations.

This Court has previously identified a five-part test to determine whether a cause of action is time-barred:

> First, the court should identify the applicable statute of limitations for each cause of action. Second the court (or, if material questions of fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitations began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc., supra.* Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine.

Syl. Pt. 5, in part, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255, (2009).

The first step outlined in *Dunn* directs us to identify the applicable statute of limitations. Petitioner was required to file his cause of action "within two years" of the date of his injury or "within two years of the date when [he] discover[ed], or with the exercise of reasonable diligence, should have discovered" his injury, whichever last

10

occurred. W. Va. Code § 55-7B-4; Syl. Pt. 1, in part, *Gaither v. City Hosp., Inc.*, 199 W. Va. 706, 487 S.E.2d 901 (1997).

Having established that Petitioner's claim was governed by a two-year statute of limitations*,* we must determine when the requisite elements of the cause of action occurred. The MPLA expressly provides that "[a] cause of action for medical injury to a person alleging medical professional liability against a health care provider … arises as of the date of medical injury." W. Va. Code § 55-7B-4(a). Petitioner's injury that was allegedly caused by medical negligence necessarily occurred prior to the end of his treatment with Respondents in February 2018. Further, if his addiction resulted from the health care that Respondents provided, that addiction also had to have existed, at a minimum, by the last date that Respondents provided healthcare to him.

Petitioner focuses much of his argument on the third step outlined in *Dunn* – applying the discovery rule to determine when the statute began to run by determining when he knew, or, by the exercise of reasonable diligence, should have known of the elements of a possible cause of action. Petitioner asserts two different dates he maintains

the statute of limitations in his case began to run; namely sometime during the month of "August 2018" or "at the earliest mid to late July, 2018."[11]

According to Petitioner, he first learned that his injuries resulted from Respondents' negligence when he "completed his residential/inpatient drug rehabilitation" in conjunction "with his required treatment at the Cranberry Medical Center in August 2018." Petitioner maintains that "he did not know that his injuries … including the opioid dependence and addiction, were a result of [Respondents'] negligent conduct until such time as he completed his residential/inpatient treatment … in August 2018, when **[he] was no longer experiencing any pain**." Based on this assertion, it appears that Petitioner alleges that he was not reasonably aware that Respondents had allegedly overprescribed prescription medication until it became evident the medications were actually causing, rather than treating, his pain symptoms.[12] Specifically, Petitioner cites the date of August 27, 2018, as the date he discovered Respondents' alleged negligence and malpractice, describing such day as the date that his "mind and body" were opioid free with no mention of pain. Alternatively, he asserts that the statute of limitations could possibly have begun to run no earlier than mid to late July 2018, when his medical records were received and

---

[11] At one point in his brief, Petitioner asserts that there is "no way" that the "statute of limitations date [could] be any earlier than July 12, 2021." We believe that this is a typographical error and that Petitioner actually meant July 12, 2018. This date appears to coincide with the date Petitioner alleges that his medical records were received and reviewed.

[12] Petitioner makes at least one other reference that he did not discover Respondents' negligence and malpractice until he became pain free.

12

reviewed. We disagree with his contention that the statute of limitations had not yet begun to run until those dates.

Petitioner argues that the knowledge he needed to "trigger the limitation period require[d] something more than a mere apprehension that something may be wrong," and he is correct. *Gaither v. City Hosp., Inc.*, 199 W. Va. 706, 714, 487 S.E.2d 901, 909 (1997). However, Petitioner fails to acknowledge the remainder of this Court's analysis with respect to the knowledge required to trigger the limitation period. In *Gaither*, this Court also noted that we did

> not go so far as to require recognition by the [Petitioner] of *negligent* conduct. In medical malpractice actions, such a standard is usually beyond the comprehension of a lay person and actually assumes a conclusion that must properly await a legal determination by a jury. Such a requirement would also result in a situation "where the statute of limitations would almost never accrue until after the suit was filed."

*Id.* In *Gaither*, we "simply h[e]ld that once a patient is aware, or should reasonably have become aware, that medical treatment by a particular party has caused a personal injury, the statute begins [to run]." *Id.*

By May 1, 2018, Petitioner was drug free and had articulated to his treating physician, Dr. Lewis, that his prior physician had been prescribing him methadone and hydrocodone at doses that "gradually increased … without making him aware of the potential problems that they could cause." Dr. Lewis indicated in his May 1, 2018 letter

13

that "[i]n terms of [Petitioner's] prescribed medications prior to entering the rehab facility, it certainly seems like excessive and unusual amounts to prescribe together and personally I would never prescribe that dosage or combination of medications for any patient." On May 7, 2018, the circuit court was informed that Petitioner had successfully completed his drug rehabilitation program. Four days later, on May 11, 2018, counsel for Petitioner sent a letter to Grafton City Hospital requesting copies of Petitioner's medical records. This letter included an "Authorization to Disclose Health Information" that was executed by Petitioner on June 16, 2017, and it clearly indicated that the information being requested was "for the purpose of litigation or potential litigation[.]" Having possessed such knowledge by May 11, 2018, Petitioner's allegation that he lacked sufficient knowledge of the nature of his claim or the parties responsible for his alleged injury until July or August 2018 is simply unsupported by the record.

Petitioner's argument that the statute of limitations began to run in July or August 2018, is also belied by his actions. On January 22, 2020, Petitioner served his first notice of claim with a statement of intent that he would provide a screening certificate of merit within sixty days. Arguably, by filing the first notice of claim pursuant to West Virginia Code § 55-7B-6(d), Petitioner believed that the expiration of the statute of limitations was imminent and that he had insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations. West Virginia Code § 55-7B-6(d), where applicable, permits claimants who have insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations

14

to furnish a statement of intent to provide the screening certificate of merit within sixty days of the date the health care provider receives the notice of claim. Specifically, West Virginia Code § 55-7B-6(d) states:

> Except for medical professional liability actions against a nursing home, assisted living facility, their related entities or employees, or a distinct part of an acute care hospital providing intermediate care or skilled nursing care or its employees, if a claimant or his or her counsel has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations, the claimant shall comply with the provisions of subsection (b) of this section except that the claimant or his or her counsel shall furnish the health care provider with a statement of intent to provide a screening certificate of merit within 60 days of the date the health care provider receives the notice of claim. The screening certificate of merit shall be accompanied by a list of the medical records otherwise required to be provided pursuant to subsection (b) of this section.

W. Va. Code § 55-7B-6(d). West Virginia Code § 55-7B-6(d), where applicable, provides a plaintiff in an action filed pursuant to the MPLA sixty days to provide a screening certificate of merit if a plaintiff or his or her counsel "has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations." Under the clear language of the statute, by asserting the need for such extension, Petitioner arguably believed that the statute of limitations would run less than sixty days following the notice of claim. Otherwise, the extension provided for in West Virginia Code § 55-7B-

15

6(d) would have been unnecessary.[13]  If, as Petitioner claims, the statute of limitations did not begin to run until July or August 2018, he would not have needed an additional sixty days in January 2020 to obtain a screening certificate of merit before the statute ran in July or August 2020.  Proceeding under West Virginia Code § 55-7B-6(d) in January 2020 is in direct contrast to Petitioner's argument that the statute of limitations did not begin to run until July or August 2018.  In addition, the circuit court concluded, and we agree, that the Petitioner's records request accompanied by his "Authorization to Disclose Health Information," "clearly shows that [Petitioner] discovered his potential cause of action no later than May 11, 2018[.]"

Petitioner also alleges that the determination of when he knew, or in the exercise of reasonable diligence had reason to know, of the alleged medical malpractice is a question for the jury, not the circuit court.  However, we have previously noted that "[w]hile many cases will require a jury to resolve the issue of when a plaintiff discovered his or her injury, including the related issue of whether the plaintiff was reasonably diligent in discovery [of] his or her injury, *the issue can also be resolved by the court where the relevant facts are undisputed and only one conclusion may be drawn from those facts.*"

---

[13] We must clarify that invocation of the sixty-day extension to file a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(d) is designed to permit additional time to comply with the requirements of the MPLA and does not artificially *shorten* a statute of limitations. The statute of limitations as provided for in statute is fixed, subject to an extension to allow a plaintiff to file the screening certificate of merit sixty days after the notice of claim.  Here, however, Petitioner's screening certificate of merit was not provided within the time frame of the extension and, thus, was ineffective to toll the statute of limitations.

16

*McCoy v. Miller*, 213 W. Va. 161, 167, 578 S.E.2d 355, 361 (2003) (internal citations omitted) (emphasis added). The facts relied upon by the circuit court lead to only one conclusion, namely that Petitioner discovered his potential cause of action no later than May 11, 2018. The circuit court found, and a review of the record clearly reveals, that there was no genuine issue of material fact regarding when Petitioner discovered his injury.

Petitioner further alleges that the circuit court erred in concluding that he failed to comply with the applicable provisions of the MPLA. Petitioner maintains that he did, in fact, comply with the MPLA and that such alleged compliance served to toll the applicable statute of limitations. We disagree.

Because, under the facts of this case, Petitioner had sufficient knowledge of the relevant facts related to his claim by May 11, 2018, the statute of limitations began to run on that date. Accordingly, Petitioner had until May 11, 2020, to serve the notice of claim to toll his statute of limitations under West Virginia Code § 55-7B-6(i), which provides:

> any statute of limitations applicable to a cause of action against a health care provider upon whom notice was served for alleged medical professional liability shall be tolled from the date of mail of a notice of claim to 30 days following receipt of a response to the notice of claim, 30 days from the date a response to the notice of claim would be due, or 30 days from the receipt by the claimant of written notice from the mediator that the mediation has not resulted in a settlement of the alleged claim and that mediation is concluded, whichever last occurs.

17

To invoke this tolling provision, Petitioner was required to provide a completed notice of claim, which includes a screening certificate of merit, or timely file the screening certificate of merit within the extension permitted by subsection (d). West Virginia Code § 55-7B-6(b), in part, contains the pre-suit notice requirements and requires that "[a]t least 30 days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation." West Virginia Code § 55-7B-6(b) provides that:

> the notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, *together with a screening certificate of merit.*

(Emphasis added). Taking into account administrative orders entered by this Court to address the COVID-19 emergency, in order to implicate the tolling provisions of the MPLA, Petitioner was required to serve such screening certificate of merit by May 29, 2020, but he failed to do so.[14] While Petitioner filed a timely notice of claim in January

---

[14] Before Petitioner served his screening certificate of merit, this Court declared a judicial emergency related to the COVID-19 crisis. Thereafter, this Court entered several administrative orders extending statutes of limitation and deadlines set forth in court rules and statutes. This Court's May 6, 2020 Administrative Order provided: "[d]eadlines set forth in court rules, *statutes* (excluding statutes of limitation and repose), ordinances, administrative rules, scheduling orders, or otherwise that expired between March 23, 2020, and April 17, 2020, are hereby extended to *May 29, 2020*, unless otherwise ordered by the presiding judicial officer[.]" (emphasis added). Because the screening certificate of merit

18

2020, he did not file a *completed* notice of claim, including the certificate of merit until July 2020. The mere filing of successive notices of claim and characterizing them as "amended" did not toll the statute of limitations under the MPLA.[15]  Accordingly, because the statute of limitations had already run by July 2020, and he had not completed the necessary steps under the MPLA to toll it, his untimely filing of a certificate of merit did not render his complaint timely.

Therefore, Petitioner's third notice of claim and his subsequently filed complaint were both filed after the expiration of the statute of limitations.[16]  Despite Petitioner's numerous arguments to the contrary, his failure to timely serve his screening

---

is governed by statute, Petitioner was clearly required to serve the screening certificate of merit related to his first notice of claim by May 29, 2020.

[15] Petitioner's argument that his complaint was timely appears to be premised on the simple fact that he served a notice of claim and provided a screening certificate of merit before he filed his complaint, but the fact remains that he did not serve such notice and certificate of merit as required by statute to effectuate the tolling provision.

[16] The circuit court gave Petitioner the benefit of examining the scenario that would have played out if Petitioner had timely filed the screening certificate of merit.  Under this scenario, the circuit court concluded that, given no response from the Respondents, the statute of limitation would have been July 31, 2020, which was still over two months before Petitioner filed his complaint.  We believe that examining this scenario is unnecessary since Petitioner clearly failed to timely file the screening certificate of merit on or before May 29, 2020, and this failure resulted in the statute expiring in May 2020.  To the extent that our determination as to when the statute expired may differ from the date contemplated by the circuit court, "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

19

certificate of merit abrogated his claim that the tolling provisions of the MPLA extended his deadline to file his complaint and justified the circuit court's decision to grant summary judgment in favor of Respondents.[17]

Petitioner also argues that actions taken by Respondents following his third notice of claim tolled the statute of limitations. Specifically, Petitioner asserts that a letter sent by counsel for Respondents dated July 13, 2020, requesting "a complete copy of all of the health care records" for Petitioner "for proper evaluation of whether [Respondents] desire pre-litigation mediation" and Petitioner's responses to that letter tolled the statute of limitations. However, because we conclude that the third notice of claim was filed after the expiration of the statute of limitations, *infra*, this argument is without merit. Further, the circuit court considered this argument and concluded that Respondents "did not request pre-litigation mediation under the MPLA and did not take any action that would extend or

---

[17] Petitioner also maintains that he acted in good faith, and as such, his case should not be dismissed pursuant to *Elmore v. Triad Hospitals, Inc.*, 220 W. Va. 154, 640 S.E.2d 217 (2006). Again, Petitioner's argument is without merit. In *Elmore*, the petitioner filed his cause of action within the applicable statute of limitations and even refiled his suit within the applicable statute of limitations in order to preserve his action had his appeal not resulted in reinstatement. "[S]tatutes of limitations are favored in the law and cannot be avoided unless the party seeking to do so brings himself strictly within some exception. It has been widely held that such exceptions 'are strictly construed and are not enlarged by the courts upon considerations of apparent hardship." *Humble Oil & Refining Co. v. Lane*, 152 W. Va. 578, 583, 165 S.E.2d 379, 383 (1969) (quoting *Woodruff v. Shores*, 354 Mo. 742, 190 S.W.2d 994 (1945)).

toll the statute of limitations."[18] We agree. This Court has recently held that "[t]he failure of a healthcare provider to unequivocally decline pre-suit mediation in a response to a notice of claim does not serve to toll the statute of limitations beyond the statutorily prescribed time periods set forth in the provisions of West Virginia Code § 55-7B-6(i)." Syl. Pt. 2, *Adkins v. Clark*, 247 W. Va. 128, 875 S.E.2d 266 (2022). In summary, the statute of limitations in this case expired in May 2020, and the statute was not tolled as argued by the Petitioner. Accordingly, the circuit court did not err in dismissing Petitioner's complaint.

Finally, we find no merit to Petitioner's arguments that the statute of limitations was tolled by Respondents' alleged fraudulent concealment under the fourth step enunciated in *Dunn.* Generally, Petitioner alleges that "Respondents fabricated medical records month-after-month . . . to legitimize their continuous prescribing of controlled substances[.]" As we have noted *supra*, by the time Petitioner requested the medical records for which he complains, he was already: (1) drug free, (2) aware that he had been addicted to controlled substances, and (3) aware that the controlled substances that he had been taking for years as well as the increased dosages over time were prescribed by Respondents. Further, he had already retained an attorney and executed an authorization requesting his medical records "for the purpose of litigation or potential litigation."

---

[18] Order Granting [Respondents'] Motions to Dismiss/Motions for Summary Judgment at ¶ 13.

21

Accordingly, any issues related to the alleged concealment did not deprive Petitioner of the knowledge of facts necessary to initiate and pursue his cause of action.

## IV. CONCLUSION

For all of the foregoing reasons, we conclude that the circuit court did not err in granting summary judgment in favor of the Respondents. Accordingly, the circuit court's order denying Petitioner's Rule 59(e) motion to alter or amend the grant of summary judgment to the Respondents is hereby affirmed.

Affirmed.